Filed 3/9/22  In re Genesis R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re GENESIS R., a Person Coming Under the Juvenile Court Law. | B311916 (Los Angeles County Super. Ct. No. 18CCJP07603A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANNA B., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Anna B. (mother) appeals from the juvenile court's order terminating parental rights over her daughter Genesis R. (born 2018). Mother contends the beneficial parent-child exception to terminating parental rights applies and that an option other than adoption should be selected as the permanent plan. We disagree and therefore affirm the juvenile court's order.

## BACKGROUND

**Detention and Welfare and Institutions Code section 300 petition**

In November 2018, the Los Angeles County Department of Children and Family Services (the Department) filed a petition under Welfare and Institutions Code[1] section 300, subdivision (b), alleging that Genesis was at substantial risk of serious physical harm because of mother's substance and methamphetamine abuse; Genesis's positive toxicology screen for amphetamine at birth; mother's mental and emotional problems, which had required past hospitalization; father Alain R.'s (father)[2] amphetamine and methamphetamine abuse; and father's mental and emotional problems, including a diagnosis of schizophrenia.

---

[1]      All further statutory references are to the Welfare and Institutions Code.

[2]      Father is not a party to this appeal.

2

The Department obtained a removal warrant to detain Genesis from both parents.

At the November 29, 2018 detention hearing, the juvenile court ordered Genesis detained from father and released to mother. The court accorded father monitored visits not to include mother at a neutral location.

In January 2019, the Department filed an ex parte application pursuant to section 385 to detain Genesis from mother because mother had allowed father to have unauthorized contact with Genesis in mother's home. At the January 9, 2019 hearing on the section 385 petition, the juvenile court ordered Genesis detained from mother. Genesis was placed with caregivers Mr. and Mrs. J.

**Jurisdiction and disposition**

At the January 16, 2019 combined jurisdiction and disposition hearing, both parents pled no contest to the allegations of the section 300 petition. The juvenile court sustained the allegations pertaining to the parents' substance abuse problems, as amended by interlineation, dismissed the remaining counts, and sustained the petition as amended. The court declared Genesis a dependent child and ordered her removed from the custody of both parents. Mother and father were both granted reunification services. Mother's case plan included a full drug and alcohol program, random drug testing, a parenting program, mental health counseling, and individual counseling. The juvenile court granted mother monitored visits and gave the Department discretion to liberalize the visits.

**Six-month review**

Mother told the social worker in March 2019 that she was trying to separate from father but was having difficulty doing so

because father contacted her frequently. Mother was in partial compliance with her case plan. She had enrolled in a drug and alcohol program and had 10 negative drug tests and six missed tests between mid-December 2018 and mid-March 2019. Mother had also enrolled in mental health services and individual counseling but had been terminated from her parenting program for nonattendance. Mother regularly attended monitored visits with Genesis. On April 23, 2019, the juvenile court ordered the Department to assess mother for unmonitored visits. On April 30, 2019, the Department liberalized mother's visits to unmonitored visits two times a week for three hours.

In July 2019, the Department reported that mother had completed a parenting program, was enrolled in a substance abuse aftercare program, and was participating in individual counseling. She continued to test negative for drugs; however, she missed four tests in April and May of 2019. Mother told the social worker she was no longer in a relationship with father. Genesis's foster parents told the social worker they were willing to adopt Genesis if the parents failed to reunify and other family members were not an option.

At the six-month review hearing held on July 15, 2019, the juvenile court found mother had made substantial progress in completing her case plan. The court ordered continued reunification services for both parents.

**Twelve-month review**

Mother told the social worker in September 2019 that she had been hospitalized for mental health treatment on August 29, 2019. After her discharge on September 4, 2019, mother moved to a sober living home. Mother said she and father had resumed their relationship and hoped to reunify with Genesis together.

4

Although mother failed to appear for multiple drug tests, she was in substantial compliance with her case plan. She visited frequently with Genesis. Father was not in compliance with his case plan and had stopped visiting Genesis.

Genesis remained placed with Mr. and Mrs. J., with whom she appeared to be well bonded. The social worker observed Genesis being affectionate with Mrs. J. and asking for the J.'s younger daughter.

At the January 14, 2020 12-month review hearing, the juvenile court found continued jurisdiction was necessary and continued mother's reunification services. The court terminated father's services.

**Eighteen-month review**

The Department reported in June 2020 that mother was visiting with Genesis two times a week for two hours per visit. Mother was appropriate during the visits and was teaching Genesis to say new words. Mother began having three unmonitored visits per week with Genesis in mother's backyard. Mrs. J. reported that Genesis was having some difficulty in adjusting to the increased visitation schedule. Genesis sometimes had tantrums or did not want Mrs. J. to leave the visit.

At the 18-month review hearing held on June 18, 2020, the juvenile court found that mother continued to make substantial progress with her case plan and continued jurisdiction. Pursuant to a stipulation by the parties, the juvenile court ordered Genesis returned to mother under the Department's supervision with family maintenance services.

**Section 387 petition**

In August 2020, the Department filed a section 387 petition alleging that mother had tested positive for amphetamines the previous month, while Genesis was in her care. The petition further alleged that on a prior occasion in 2020, mother had possessed drug paraphernalia in the home. Mother was recently hospitalized for a methamphetamine overdose and admitted using methamphetamine on five occasions since Genesis was returned to her care. She had also continued her relationship with father. In conjunction with the section 387 petition, the Department obtained a warrant to remove Genesis from mother.

At the September 15, 2020 hearing on the section 387 petition, the juvenile court sustained the allegations, found that its previous disposition had not been effective in protecting Genesis, and ordered Genesis removed from mother's custody. The juvenile court further found that mother had exhausted her family maintenance and reunification services. The court terminated mother's services and set a section 366.26 hearing. The court granted mother monitored visits at least two times a week, one hour per visit, and gave the Department discretion to liberalize the visits.

**Section 366.26 report**

In November 2020, the Department reported that mother had entered a residential drug treatment program in Orange County. The social worker transported Genesis to mother's program facility for three monitored in-person visits between late August and early October 2020. Although Genesis was hesitant to interact with mother during the first 10 or 15 minutes of the initial visits, she later laughed and played with mother on the

facility's playground equipment.  Mother was appropriate during the visits.

Genesis was again placed with Mr. and Mrs. J., who had been approved as prospective adoptive parents.  The J.s expressed their willingness to adopt Genesis, who was thriving in their home.

**Section 388 petition and termination of parental rights**

Mother filed a section 388 petition in February 2021 seeking to change the order setting the section 366.26 hearing. Mother requested placement of Genesis with her, or alternatively, unmonitored visits.  Mother stated in her petition that she was actively focused on her sobriety; had completed a substance abuse treatment, sober living, and outpatient program; and attended 12-step meetings with a sponsor.  She attached numerous letters and progress reports in support of her petition. The trial court set an evidentiary hearing on mother's section 388 petition for the same date as the section 366.26 hearing.

In its response to mother's section 388 petition, the Department reported that mother had completed her residential drug treatment program in late 2020.  Mother now lived in Orange County, had a full-time job, and did volunteer work as well.  She had ended her relationship with father and no longer had any contact with him.  Mother said she had a strong support network and was committed to her sobriety.  She admitted having concerns about Genesis being separated from the caregivers if the child were returned to her custody.  Mother had some in-person visits with Genesis while mother was in residential treatment, because the social worker transported Genesis to mother's facility.  Her current visits were via FaceTime on Tuesdays and Fridays.

Mrs. J. told the social worker that mother had no monitored in-person visits with Genesis between October 2020 and late February 2021. Mother's telephonic visits with Genesis generally lasted no more than five or six minutes. Mrs. J. told the social worker that Genesis regressed when she was last in mother's care. Genesis stopped talking, resumed using a bottle and pacifier, and would often refuse to eat. Mother told Mrs. J. that Genesis cried at night for Mrs. J. and for the J.'s daughter. When Genesis was returned to the caregivers' home, it took several months for the child's verbal skills to return.

The social worker confirmed that Genesis had regressed during the attempted reunification with mother. Genesis continued to struggle with speech delays, and the Department was adding speech therapy to the child's services. The social worker stated that mother did not request in-person visits after completing residential treatment in October 2020. When the social worker asked mother about scheduling in-person visits, mother declined, stating that she was busy and that she had a long way to drive. The Department was not currently considering unmonitored visits for mother because she had not participated in consistent monitored visits. The social worker opined that mother had not maintained a connection with Genesis.

Mother's in-person monitored visits with Genesis resumed in February 2021. During the first visit at a local park, Genesis cried and called for Mrs. J. for approximately 45 minutes, but she eventually stopped crying and then played and laughed with mother. When Mrs. J. returned at the end of the visit, Genesis immediately ran to her, smiled, and said, "Mommy."

Mrs. J. reported that Genesis was clingy and whiny the day after her initial monitored visit with mother. Mother's video visit with Genesis later that week started out well, but Genesis "shut down" several minutes into the call and began crying.

At the outset of mother's subsequent monitored visits, Genesis clung to Mrs. J. and pretended to be asleep. Mother eventually engaged Genesis, and Mrs. J. was able to leave the park without incident. The social worker observed Genesis smiling and playing with mother during the visits. Genesis called mother "Nanna." When Mrs. J. returned at the end of the visits, Genesis ran to her and said "Mommy."

Mother's video visits with Genesis after the in person visits followed the same pattern. Genesis was fine for the first few minutes of the call but she then "shut down" and would not speak or make eye contact with mother.

**Section 388 and 366.26 hearings**

On March 18, 2021, the juvenile court held a hearing on mother's section 388 petition, followed immediately thereafter by a section 366.26 hearing. The court received into evidence the Department's reports and a letter submitted by mother.

Mother testified about her experience in her residential drug treatment program, sober living facility, and her current independent housing. She affirmed her commitment to sobriety and said she had a robust support network and had separated from father.

Mother testified that she had monitored visits with Genesis while in residential treatment because the social worker had driven Genesis from Los Angeles to mother's facility in Orange County. Mother explained that she did not continue in-person visits with Genesis after completing her residential treatment

9

because she did not feel sufficiently stable in her sobriety. Her in-person visits with Genesis resumed in February 2021. Mother acknowledged that the first visit was difficult, but she said that the quality of the visits improved thereafter and Genesis willingly came to her. Mother testified that in addition to monitored visits she has 15- to 30-minute FaceTime visits with Genesis. Mother concluded by stating that her sobriety is a priority because she could not adequately parent Genesis if she were not sober.

After hearing argument from the parties, the juvenile court denied mother's request to return Genesis to her custody. The court granted mother's request for unmonitored visitation but noted that its order granting that request would be superseded if mother's parental rights were terminated.

The matter then proceeded to the section 366.26 hearing. Mother's counsel argued that the beneficial parent-child exception to terminating parental rights applied, that mother's visitation was regular and consistent, and that Genesis would benefit from maintaining a relationship with mother. Counsel for Genesis and the Department argued for termination of parental rights.

At the conclusion of the hearing, the juvenile court found that mother had not maintained regular visitation with Genesis and had not established a bond with her. The court further found that mother had not shown that terminating parental rights would be detrimental to Genesis. The juvenile court found that Genesis was adoptable and that no exception to adoption applied. The court then terminated parental rights. This appeal followed.

**DISCUSSION**

**I.    Applicable law and standard of review**

Once a juvenile court has terminated reunification services and determined that a child is adoptable, the court is required to terminate parental rights unless it finds an applicable exception. (§ 366.26, subd. (c)(1).) The exception at issue here, sometimes referred to as the beneficial parent-child exception, applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

The parent bears the burden of proving that the exception applies. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 952-954.) To do so, the parent must prove the three statutory elements: "(1) regular *visitation and contact*, and (2) a *relationship,* the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 631 (*Caden C.*).)

For the first element, visitation, the question is simply whether the parent visited consistently, as permitted by court orders. The focus is not on punishing or rewarding parents for their behavior in visiting or maintaining contact, but on the best interests of the child. (*Caden C., supra*, 11 Cal.5th at p. 632.)

As to the second element, whether the child would benefit from continuing the relationship, "the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship." (*Caden C., supra*, 11 Cal.5th at p. 636.) The parent must also show that "the

11

relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*).) Relevant factors in assessing the parent-child relationship include "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs." (*Id.* at p. 576.)

For the third element, whether termination would be detrimental to the child, the court must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C., supra*, 11 Cal.5th at p. 633.)

We review the juvenile court's findings concerning visitation and whether the child would benefit from continuing the relationship with the parent for substantial evidence. (*Caden C., supra*, 11 Cal.5th at pp. 639-640.) Whether termination of parental rights would be detrimental to a child because of the child's relationship with the parent is a question we review for abuse of discretion. (*Ibid.*)

II. **There is substantial evidence that Genesis did not have a substantial, positive emotional attachment to mother and that Genesis would not benefit from continuing the relationship**

Mother did not sustain her burden of establishing that Genesis had a substantial, positive, emotional attachment to her[3]

---

[3] Mother must establish all three elements of the beneficial parent-child exception. (*Caden C., supra*, 11 Cal.5th at p. 631.) She did not sustain her burden of establishing a substantial

12

at the time of the section 366.26 hearing.  The evidence is to the contrary.  The record shows that Genesis was reluctant to engage with mother during recent monitored visits and clung to Mrs. J. instead.  When Mrs. J. returned at the end of the visits, Genesis immediately ran to her and called her "Mommy."  The social worker who monitored the in-person visits opined that mother had not maintained a connection with Genesis.

Genesis's behavior after the monitored visits indicated that interaction with mother had a negative effect on the child.  Genesis became clingy and insisted on remaining in the same room as Mrs. J.  Genesis told her foster family members "no Nana" (the child's name for mother) and repeatedly said "no bye bye Nana," signaling her distress at being left with mother during monitored visits.  FaceTime visits with mother following the in-person visits were unsuccessful.  Genesis "shut down" completely a few minutes into the calls and refused to speak or make eye contact with mother.

Genesis's relationship with her prospective adoptive family, in contrast, was strongly positive.  She was clearly bonded to the J.s and their children and was openly affectionate with them.  The social worker noted that Genesis viewed her caregivers as her family and that losing the only family the child had ever known would be traumatic.  Mother also expressed concerns about Genesis being separated from her caregivers.

---

positive emotional attachment with Genesis or that terminating parental rights would be detrimental to the child.  We therefore need not address the juvenile court's finding with respect to the first element—whether mother maintained consistent visitation with Genesis.

At the time of the section 366.26 hearing, Genesis was two years old and had spent nearly her entire life with her prospective adoptive family. She was thriving in her caregivers' home. The J.s wanted to adopt Genesis and were committed to providing a loving and stable home for her. Genesis's relationship with mother was attenuated, at best, and interaction with mother often had a negative effect on the child. There is substantial evidence in the record that Genesis's relationship with mother did not promote the well-being of the child to such a degree as to outweigh the benefits she would gain in a permanent home with her prospective adoptive family. (*Autumn H., supra*, 27 Cal.App.4th at p. 575.)

Mother contends the juvenile court erred by focusing unduly on her ongoing struggles with substance abuse, whether those problems made her an unfit parent, whether she occupied a parental role when interacting with Genesis, and whether her problems made her an unfit parent. Those considerations are improper, she argues, when assessing the parent-child relationship for purposes of applying the beneficial parent-child exception.

The California Supreme Court has stated that while "[a] parent's continued struggles with the issues leading to dependency are not a categorical bar to applying the [beneficial parent-child] exception," those issues "often prove relevant to the application of the exception." (*Caden C., supra*, 11 Cal.5th at p. 637.) Issues that led to dependency jurisdiction are relevant if they inform the juvenile court's decision whether the child would benefit from continuing the relationship with the parent and would be harmed by losing it. (*Id.* at p. 638.) The record here shows that mother's ongoing struggle with her sobriety was an

14

impediment to maintaining a substantial, positive, emotional attachment with Genesis. Mother's relapse during the summer of 2020 was the cause of her failed reunification with Genesis and resulted in the child's re-placement with the J.s, with whom Genesis developed a strong bond. Mother's concern about her continued sobriety prevented her from attending in-person visits with Genesis for nearly five months after she completed her residential drug treatment. The juvenile court did not err by considering mother's struggles with her sobriety when assessing mother's relationship with Genesis and whether Genesis would benefit from continuing that relationship. (*Id.* at p. 637.)

*In re E.T.* (2018) 31 Cal.App.5th 68 and *In re Amber M.* (2002) 103 Cal.App.4th 681, which mother cites as support for her claim of juvenile court error, are distinguishable. The mothers in those cases struggled with substance abuse problems and failed to reunify with children who were nevertheless strongly bonded to them. The appellate courts in both cases reversed the order terminating parental rights, finding the evidence supported application of the beneficial parent-child exception. (*E.T.*, at p. 77; *Amber M.*, at p. 690.) The court in *E.T.* noted that the children were four years old and had spent nearly half their lives with their mother, to whom they were very bonded. (*E.T.*, at p. 77.) The court in *Amber M.* pointed to evidence of a beneficial parental relationship that included a bonding study and a court appointed special advocate report. (*Amber M.*, at p. 690.) No similar evidence was presented in this case.

Mother's claim that the juvenile court erroneously based its decision on the fact that she did not occupy a "parental role" in Genesis's life is also unavailing. Some appellate courts have

expressed concern that a juvenile court's use of that term or similar terms such as "parental relationship" in the context of the beneficial parent-child exception suggest that an improper legal standard was applied. (See *In re J.D.* (2021) 70 Cal.App.5th 833 [juvenile court's conclusory determination that the mother's relationship with child did not "'amount to a parental bond'" did not address whether child had a substantial, positive emotional attachment to parent]; *In re B.D.* (2021) 66 Cal.App.5th 1218, 1230 [questioning whether juvenile court improperly "equated a parental role, as it related to application of the parent-child relationship exception, with the ability to parent 'on a fulltime basis'"].) That concern is not present here. Notably, the records in *J.D.* and *B.D.* contained evidence of a strong parent-child bond. (See, e.g., *J.D.*, at pp. 856-857 [visitation logs showed child referred to the mother as "mommy," exhibited affection during visits and frequently told her that he loved her]; *B.D.,* at p. 1229, fn. 4 [visitation monitors reported that children were always happy to see parents and greeted them with hugs, children looked forward to visits and expressed sadness when they ended because they wanted parents to live with them].) No similar evidence of a strong bond between Genesis and mother is present in this case. Rather, the evidence indicates that interaction with mother had a negative rather than positive effect on Genesis. The juvenile court's statement that mother did not occupy a "parental role" does not persuade us that the court applied an incorrect legal standard in this case.

## III.   No abuse of discretion in terminating parental rights

The juvenile court did not abuse its discretion by concluding that terminating parental rights would not be detrimental to Genesis. The relevant inquiry in this

determination "is how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C., supra*, 11 Cal.5th at p. 633.)  Given the absence of evidence that Genesis had a substantial, positive, emotional attachment to mother, or that mother's relationship with Genesis promoted the child's well-being to such an extent as to outweigh the benefits to be gained from a permanent home with prospective adoptive parents to whom Genesis was closely bonded, the record discloses no abuse of discretion.

## DISPOSITION

The order terminating parental rights is affirmed.

_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.